EXHIBIT 1

## AFFIDAVIT IN SUPPORT OF
## SEARCH WARRANT APPLICATIONS

I, Jonathan A. Duquette, being first duly sworn, hereby state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of applications under Rule 41 of the Federal Rules of Criminal Procedure for warrants to search the following:

 a. The separate apartment located above the garage at 86 Fogg Road, Buxton, Maine (hereafter "Premises"), further described in Attachment A1, for the things described in Attachment B1; and

 b. The person of Brian Dennison and any personal effects in his actual possession, further described in Attachment A2, for the things described in Attachment B2.

2. I am an investigative or law enforcement officer of the United States within the meaning of Section 2510(7) of Title 18, United States Code, and am empowered by law to conduct investigations of and to make arrests for federal criminal offenses. I also am a "federal law enforcement officer" within the meaning of Rule 41 of the Federal Rules of Criminal Procedure.

3. I am a Task Force Officer with the Federal Bureau of Investigation (FBI). I have been in this position since June 2015, and I have been a Task Force Officer in FBI's Boston Division since January 2018. I am also a Border Patrol Agent with the U.S. Border Patrol and have been in this position since December 2009. In my career, I have utilized various investigative tools and techniques, to include the use of search warrants.

4. This affidavit is intended to show only that there is sufficient probable cause for the requested warrant. The facts set forth in this affidavit are based on my personal knowledge, information obtained during my participation in this investigation, information from others,

including law enforcement officers, my review of documents and records related to this investigation, and information gained through my training and experience.

5.  Based on the facts set forth in this affidavit, I submit that there is probable cause to believe, and I do believe, that violations of Title 18, United States Code, Section 875(c) (interstate threatening communications) have occurred. I submit that there is also probable cause to search the locations described in Attachments A1 and A2 for evidence of this crime, further described in Attachments B1 and B2.

## PROBABLE CAUSE

### REPORT OF THREAT ON TWITTER

6.  On September 8, 2021, at approximately 9:09 a.m., the FBI received information regarding a threat that had been made via the microblogging and social networking service Twitter. A Twitter user with the username @Ma1lus had been observed posting that he was building a pipe bomb and was going to kill Jews the following day with his AR-15.

7.  A review of the posts in question confirmed the content of the posts made by the Twitter user @Ma1lus:



## FOLLOW-UP INVESTIGATION

8. On September 8, 2021, FBI personnel sent an emergency disclosure request to Twitter, requesting IP logs and subscriber information for the username @Ma1lus. Information provided by Twitter in response to the request included the following:

| | |
|---|---|
| Username: | Ma1lus |
| Account creation date: | August 26, 2021 |
| Phone number: | 508-402-2741 |
| User creation IP: | 74.78.139.48 |

9. Publicly available information showed that telephone number 508-402-2741 was assigned to Inteliquent, a provider of telecommunications services and a subsidiary of Onvoy, LLC. Information provided by Inteliquent in response to an emergency disclosure request showed that the number was assigned to an Inteliquent customer, TextMe, which is an application that permits mobile phone users to make free calls and texts using a phone number that TextMe provides.

10. Information provided by TextMe in response to an emergency disclosure request showed that telephone number 508-402-2741 was assigned to username briandennison93707, using the email address briandennison@gmail.com. The last login into the account was on September 8, 2021, at 1:23 p.m. UTC.

11. Twitter also provided a list of IP addresses used to log into the @Ma1lus account between September 6, 2021, and September 8, 2021. The following IP addresses were listed:

74.78.139.48
107.77.225.160
24.97.227.121

12. Because IP address 74.78.139.48 had been used both to create the account and to log into it on September 8, FBI personnel sent an emergency disclosure request to Charter Communications, which was responsible for the address, to determine which Charter customer

had been assigned the address on September 8 at 14:31:27 UTC, the most recent login into the account.

13. In response to the emergency disclosure request, Charter reported that the IP address in question was assigned to Florice Dennison at 86 Fogg Road in Buxton.

14. Publicly available tax assessment information for the town of Buxton shows that the Premises is owned by John L. Dennison.

15. Publicly available online information shows that IP address 24.97.227.121, which also had been used to log into the @Ma1lus Twitter account, is assigned to Fairchild, at 333 Western Avenue in South Portland. Information provided by Charter in response to an emergency disclosure request confirmed this fact.

16. Later on September 8, other FBI investigators and I went to 86 Fogg Road in Buxton to determine who resided there and hopefully learn more about who had posted the threat on Twitter. Investigators spoke with Florice Dennison, who stated that she lived at the residence with her husband, son, daughter and grandchild. She said her 24-year-old son, Brian, lived in a separate unit above the garage, which was attached to the home. She said Brian worked nights at ON Semiconductor in South Portland.[1]

17. Florice Dennison went into the house to the unit over the garage to wake up Brian so we could speak with him. Brian and Florice came outside and we attempted to speak with Brian. When we asked him if he would speak with us, however, he said he did not want to do so and asked us to leave.

---

[1] I know from publicly available information that ON Semiconductor has a location at 333 Western Avenue in South Portland, and that prior to being affiliated with ON, the Western Avenue location was affiliated with Fairchild Semiconductor. ON acquired Fairchild in 2016.

18. A short while later, we spoke with Florice who was accompanied by her husband, John Dennison outside 86 Fogg Road. They told us that Brian had been obsessed with Jews for about three years, and that he believed Jews were responsible for all of his problems. They said they had many concerning conversations with Brian regarding Jews. They stated that he lived in the apartment above the garage and paid $600 per month in rent. They said he owned a few pistols and rifles, including an AR-15-style rifle, but did not keep them locked up. They said he never left the house unless he was going to work or to get food.

### INTERSTATE COMMERCE

19. When the Twitter user @Ma1lus posted the threat on September 8, the threat was posted using the internet, an instrument of interstate and foreign commerce. I also know from conversations with the United States Attorney's Office for the District of Maine that courts have concluded that transmission of information by means of the internet is equivalent to moving the information across state lines, and therefore constitutes transmission in interstate commerce.

### COMPUTERS, ELECTRONIC STORAGE, AND FORENSIC ANALYSIS

20. As described above and in Attachments B1 and B2, these applications seek permission to search for records that might be found on the Premises or in the possession of Brian Dennison, in whatever form they are found. One form in which the records might be found is data stored on a computer's hard drive or other storage media. Thus, the warrant applied for would authorize the seizure of electronic storage media or, potentially, the copying of electronically stored information, all under Rule 41(e)(2)(B).

21. *Probable cause.* I submit that if a computer or storage medium is found on the Premises or in Brian Dennison's possession, there is probable cause to believe those records will be stored on that computer or storage medium, for at least the following reasons:

    a. Based on my knowledge, training, and experience, I know that computer files or remnants of such files can be recovered months or even years after they have been downloaded onto a storage medium, deleted, or viewed via the internet. Electronic files downloaded to a storage medium can be stored for years at little or no cost. Even when files have been deleted, they can be recovered months or years later using forensic tools. This is so because when a person "deletes" a file on a computer, the data contained in the file does not actually disappear; rather, that data remains on the storage medium until it is overwritten by new data.

    b. Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space—that is, in space on the storage medium that is not currently being used by an active file—for long periods of time before they are overwritten. In addition, a computer's operating system may also keep a record of deleted data in a "swap" or "recovery" file.

    c. Wholly apart from user-generated files, computer storage media—in particular, computers' internal hard drives—contain electronic evidence of how a computer has been used, what it has been used for, and who has used it. To give a few examples, this forensic evidence can take the form of operating system configurations, artifacts from operating system or application operation, file system data structures, and virtual memory "swap" or paging files. Computer users typically do not erase or delete this evidence, because special software is typically required for that task. However, it is technically possible to delete this information.

    d. Similarly, files that have been viewed via the internet are sometimes automatically downloaded into a temporary internet directory or "cache."

  22. *Forensic evidence.* As further described in Attachments B1 and B2, these applications seek permission to locate not only computer files that might serve as direct evidence of the crimes described on the warrant, but also for forensic electronic evidence that establishes

how computers were used, the purpose of their use, who used them, and when. There is probable cause to believe that this forensic electronic evidence will be on any storage medium in the Premises or in Brian Dennison's possession because:

      a.    Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file). Virtual memory paging systems can leave traces of information on the storage medium that show what tasks and processes were recently active. Web browsers, e-mail programs, and chat programs store configuration information on the storage medium that can reveal information such as online nicknames and passwords. Operating systems can record additional information, such as the attachment of peripherals, the attachment of USB flash storage devices or other external storage media, and the times the computer was in use. Computer file systems can record information about the dates files were created and the sequence in which they were created, although this information can later be falsified.

      b.    As explained herein, information stored within a computer and other electronic storage media may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion. In my training and experience, information stored within a computer or storage media (e.g., registry information, communications, images and movies, transactional information, records of session times and durations, internet history, and anti-virus, spyware, and malware detection programs) can indicate who has used or controlled the computer or storage media. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a

search warrant at a residence. The existence or absence of anti-virus, spyware, and malware detection programs may indicate whether the computer was remotely accessed, thus inculpating or exculpating the computer owner. Further, computer and storage media activity can indicate how and when the computer or storage media was accessed or used. For example, as described herein, computers typically contain information that log: computer user account session times and durations, computer activity associated with user accounts, electronic storage media that connected with the computer, and the IP addresses through which the computer accessed networks and the internet. Such information allows investigators to understand the chronological context of computer or electronic storage media access, use, and events relating to the crime under investigation.

        c.      Additionally, some information stored within a computer or electronic storage media may provide crucial evidence relating to the physical location of other evidence and the suspect. For example, images stored on a computer may both show a particular location and have geolocation information incorporated into its file data. Such file data typically also contains information indicating when the file or image was created. The existence of such image files, along with external device connection logs, may also indicate the presence of additional electronic storage media (e.g., a digital camera or cellular phone with an incorporated camera). The geographic and timeline information described herein may either inculpate or exculpate the computer user. Last, information stored within a computer may provide relevant insight into the computer user's state of mind as it relates to the offense under investigation. For example, information within the computer may indicate the owner's motive and intent to commit a crime (e.g., internet searches indicating criminal planning), or consciousness of guilt (e.g., running a

"wiping" program to destroy evidence on the computer or password protecting/encrypting such evidence in an effort to conceal it from law enforcement).

   d. A person with appropriate familiarity with how a computer works can, after examining this forensic evidence in its proper context, draw conclusions about how computers were used, the purpose of their use, who used them, and when.

   e. The process of identifying the exact files, blocks, registry entries, logs, or other forms of forensic evidence on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. While it is possible to specify in advance the records to be sought, computer evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

   f. Further, in finding evidence of how a computer was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium. For example, the presence or absence of counter-forensic programs or anti-virus programs (and associated data) may be relevant to establishing the user's intent.

   g. I know that when an individual uses a computer to make interstate online threats the individual's computer will generally serve both as an instrumentality for committing the crime, and also as a storage medium for evidence of the crime. The computer is an instrumentality of the crime because it is used as a means of committing the criminal offense. The computer is also likely to be a storage medium for evidence of crime. From my training and experience, I believe that a computer used to commit a crime of this type may contain: data that

is evidence of how the computer was used; data that was sent or received; notes as to how the criminal conduct was achieved; records of internet discussions about the crime; and other records that indicate the nature of the offense.

23. *Necessity of seizing or copying entire computers or storage media.* In most cases, a thorough search of a premises for information that might be stored on storage media often requires the seizure of the physical storage media and later off-site review consistent with the warrant. In lieu of removing storage media from the premises, it is sometimes possible to make an image copy of storage media. Generally speaking, imaging is the taking of a complete electronic picture of the computer's data, including all hidden sectors and deleted files. Either seizure or imaging is often necessary to ensure the accuracy and completeness of data recorded on the storage media, and to prevent the loss of the data either from accidental or intentional destruction. This is true because of the following:

    a.    **The time required for an examination**. As noted above, not all evidence takes the form of documents and files that can be easily viewed on site. Analyzing evidence of how a computer has been used, what it has been used for, and who has used it requires considerable time, and taking that much time on premises could be unreasonable. As explained above, because the warrant calls for forensic electronic evidence, it is exceedingly likely that it will be necessary to thoroughly examine storage media to obtain evidence. Storage media can store a large volume of information. Reviewing that information for things described in the warrant can take weeks or months, depending on the volume of data stored, and would be impractical and invasive to attempt on-site.

    b.    **Technical requirements**. Computers can be configured in several different ways, featuring a variety of different operating systems, application software, and

configurations. Therefore, searching them sometimes requires tools or knowledge that might not be present on the search site. The vast array of computer hardware and software available makes it difficult to know before a search what tools or knowledge will be required to analyze the system and its data on the Premises. However, taking the storage media off-site and reviewing it in a controlled environment will allow its examination with the proper tools and knowledge.

    c. **Variety of forms of electronic media**.  Records sought under this warrant could be stored in a variety of storage media formats that may require off-site reviewing with specialized forensic tools.

  24. *Nature of examination.*  Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit seizing, imaging, or otherwise copying storage media that reasonably appear to contain some or all of the evidence described in the warrant, and would authorize a later review of the media or information consistent with the warrant. The later review may require techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of a hard drive to human inspection in order to determine whether it is evidence described by the warrant.

## CONCLUSION

  25. Based on the foregoing, I believe that there is probable cause to believe that violations of 18 U.S.C. § 875(c) have occurred, and that the evidence and instrumentalities of this offense, more fully described in Attachments B1 and B2, are located at the locations described in Attachments A1 and A2. I respectfully request that the Court issue search warrants for the locations described in Attachments A1 and A2, authorizing the seizure and search of the items described in Attachments B1 and B2.

I declare that the foregoing is true and correct.

Jonathan A. Duquette
Task Force Officer
Federal Bureau of Investigation

Sworn to telephonically and signed
electronically in accordance with the
requirements of Rule 4.1 of the Federal Rules
of Criminal Procedure

Date: Sep 08 2021

City and state: Portland, ME

_Judge's signature_

John H. Rich III, U.S. Magistrate Judge
Printed name and title